UNITED STATES BANKRUPTCY COURT          **FOR PUBLICATION**
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
IN RE

                                                        Chapter 11

North Shore Hematology-Oncology Associates, P.C.,          Case No.: 08-76389-ast

                        DEBTOR.
--------------------------------------------------------X


APPEARANCES:

Kenneth Reynolds, Esq.                  Martin Branzburg, Esq.
Robert J. Spence, Esq.                  Jeffrey Kurtzman, Esq.
McBreen & Kopko                         Klehr, Harrison, Harvey, Branzburg,
Proposed Attorneys for Debtor and       Ellers
Debtor-in-Possession                    Attorneys for ASD Specialty Healthcare,
500 N. Broadway, Suite 129              Inc.
Jericho, New York 11753                 260 South Broad Street
                                        Philadelphia, PA 19102

Alfred M. Dimino
Office of the United States Trustee     Robert L Pryor, Esq.
560 Federal Plaza                       Pryor & Mandelup, LLP
Central Islip, New York 11722           675 old Country Road
                                        Westbury, NY 11590

Barton Nachamie, Esq.
Todtman Nachamie Spizz & Johns PC       Harold Berzow, Esq.
Attorney for Harish K. Malhotra         Ruskin Moscou Faltischek
425 Park Avenue                         1425 RexCorp Plaza
New York, NY 10022                      Uniondale, NY 11556

Gerard R. Luckman, Esq.
Silverman Acampora LLP
Attorneys for Suffolk County National
Bank
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753



HON. ALAN S. TRUST, United States Bankruptcy Judge:



**MEMORANDUM OPINION ON APPOINTMENT OF
PATIENT CARE OMBUDSMAN UNDER SECTION 333(a)(1)**

### Introduction

Before the Court is the determination of whether Debtor is a health care business as defined by the Bankruptcy Code and Rules and, if so, whether the Court should appoint an ombudsman to monitor the quality of patient care and represent the interests of the patients.  Debtor has designated itself on its petition as a health care business. However, based on the specific facts of this case, this Court waives the appointment of an ombudsman, without prejudice to revisiting this issue in the future if the facts and circumstances so merit.

### Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (O) and 1334(b), and the Standing Order of Reference in effect in the Eastern District of New York.

### Procedural Background

On November 13, 2008 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). [dkt item 1]  On November 17, 2008, the Bankruptcy Clerk's Office provided a *Request to Chambers Re: Appointment of Patient Care Ombudsman*. [dkt item 17] This Court heard first day motions on November 18, 2008.  At that time, this Court scheduled a hearing to consider the patient care matter for December 3, 2008. The Debtor filed an Affirmation in Response to the patient care matter on December 2, 2008 (the "Hearing"), stating that appointment of an ombudsman was not necessary. [dkt item 45]

The Debtor remains in possession of its assets and continues to manage its business as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner, or committee of creditors has been appointed in this case.

### **Factual Background**

The following facts are not in controversy.

The Debtor is a physician owned healthcare practice with its principal office located in Setauket, New York.  Debtor operates as a "For Profit" professional corporation organized under the laws of the State of New York and is engaged in the business of furnishing various health care services in the areas of cancer treatment and blood disorders.

Debtor operates out of five locations, where it provides the following services:

a. 181 Belle Meade Avenue, East Setauket, New York (North Shore Radiation therapy practice);

b. 285 Sills Road Suite 16, Patchogue, New York (South Shore hematology and oncology practice);

c. 285 Sills Road Suite 17, Patchogue, New York (South Shore radiation therapy practice);

d. 17 Technology Drive, East Setauket, New York (billing and collection office);

e. 235 North Belle Meade Road, East Setauket, New York (North Shore hematology and oncology practice as well as its corporate office); and

f. St. Catherine of Siena Medical Center, 48 Rte. 25A Suite 209, Smithtown, NY 11787 (hematology and oncology practice).

### Discussion of Section 333(a) and Bankruptcy Rule 2007.2

Section 333(a)(1) of the Bankruptcy Code provides: "If the debtor . . . is a health care business, the court shall order, not later than 30 days after the commencement of the case, the appointment of an ombudsman to monitor the quality of patient care and to represent the interests of the patients of the health care business unless the court finds that the appointment of such ombudsman is not necessary for the protection of patients under the specific facts of the case."  11 U.S.C. § 333(a)(1).

Pursuant to Sections 333(a)(2)(A) and 333(b) of the Bankruptcy Code, if appointed, an ombudsman must be disinterested and must:

(1) monitor the quality of patient care provided to patients of the debtor, to the extent necessary under the circumstances, including interviewing patients and physicians;

(2) not later than 60 days after the date of appointment, and not less frequently than at 60-day intervals thereafter, report to the court after notice to the parties in interest, at a hearing or in writing, regarding the quality of patient care provided to patients of the Debtor; and

(3) if such ombudsman determines that the quality of patient care provided to patients of the debtor is declining significantly or is otherwise being  materially compromised, file with the court a motion or a written report, with notice to the parties in interest immediately upon making such determination.

11 U.S.C. §§ 333(a)(2)(A) and (b).

Bankruptcy Code § 101(27A) defines a "health care business" as follows:

(A) means any public or private entity (without regard to whether that entity is organized for profit or not for profit) that is primarily engaged in offering to the general public facilities and services for-

(I) the diagnosis or treatment of injury, deformity, or disease; and

(ii) surgical, drug treatment, psychiatric, or obstetric care; and

(B) includes-

(I) any-

(I) general or specialized hospital;

(II) ancillary ambulatory, emergency, or surgical treatment facility;

(III) hospice;

(IV) home health agency; and

(V) other health care institution that is similar to an entity referred to in subclauses (I), (II), (III), or (IV); and

(ii) any long-term care facility, including any-

(I) skilled nursing facility;

(II) intermediate care facility;

(III) assisted living facility;

(IV) home for the aged;

(V) domiciliary care facility; and

(VI) health care institution that is related to a facility referred to in subclauses (I), (II), (III), (IV), or (V), if that institution is primarily engaged in offering room, board, laundry, or personal assistance with activities of daily living and incidentals to activities of daily living.

11 U.S.C. § 101(27A).

At the Hearing, the United States Trustee (the "UST") stated its belief that Debtor likely is a health care business.  Based on the Bankruptcy Code's definition and the business conducted by Debtor, this Court finds that Debtor is a health care business.

Section 333(a) requires this Court act on the issue of whether it should appoint an ombudsman within thirty (30) days after the petition date.  However, Bankruptcy Rule

2007.2(b)[1] provides that "[i]f the court has ordered that the appointment of an

ombudsman is not necessary . . . the court, on motion of the United States trustee or a

party in interest, may order the appointment at any time during the case if the court finds

that the appointment of an ombudsman is necessary to protect patients." FED. R. BANK.

PROC. 2007.2(b).

At this stage of this case, this Court finds that the appointment of an ombudsman

is not necessary. Helpful to this Court's consideration is the position of the UST that

appointment did not appear necessary at this time.

This Court follows the analysis in *In re Alternate Family Care,* 377 B.R. 754

(Bankr. S.D. Fla. 2007). The *Alternate Family Care* court set out a test to determine

whether the appointment of a patient care ombudsman is necessary under the specific

facts of a case. This test requires an examination of the operations of the debtor in light

of the following nine non-exclusive factors:

1. The cause of the bankruptcy;

2. The presence and role of licensing or supervising entities;

3. Debtor's past history of patient care;

4. The ability of the patients to protect their rights;

5. The level of dependency of the patients on the facility;

---

[1] Several interim bankruptcy rules, including Interim Rule 2007.2, were created at the time of adoption of the BAPCPA amendments in October 2005. These new rules, as well as amendments to existing rules, were subject to a three (3) year review and comment period. On September 27, 2005, the Eastern District of New York Bankruptcy Court, by General Order of the Court No. 497, *In the Matter of Adoption of Interim Bankruptcy Rules*, adopted the Interim Rules in their entirety without change, effective October 17, 2005. These rules and amendments to the Federal Rules of Bankruptcy Procedure, with the exception of Interim Rule 5012, took effect on December 1, 2008, as Congress did not act to the contrary, Thus, prior Interim Rule 2007.2 is now in effect as Rule 2007.2.

6. The likelihood of tension between the interests of the patients and the debtor;

7. The potential injury to the patients if the debtor drastically reduced its level of patient care;

8. The presence and sufficiency of internal safeguards to ensure appropriate level of care; and

9. The impact of the cost of an ombudsman on the likelihood of a successful reorganization.

*Alternate Family Care*, 377 B.R. at 758.  The *Alternate Family Care* debtor was a state licensed child placement and care agency, which qualified as a heath care business under § 101(27A).  *Id.* at 761.

The weight to be accorded to each of the *Alternate Family Care* factors when making a determination whether to appoint a patient care ombudsman is left to the sound discretion of the reviewing court. *See In re Valley Health Sys.*, 381 B.R. 756, 762 (Bankr. C. D. Cal. 2008).   Additional factors to be considered by the court include: (1) the high quality of the debtor's existing patient care; (2) the debtor's financial ability to maintain high quality patient care; (3) the existence of an internal ombudsman program to protect the rights of patients, and/or (4) the level of monitoring and oversight by federal, state, local, or professional association programs which renders the services of an ombudsman redundant. *Valley Health Sys.*, 381 B.R. at 762; *See also* 3 COLLIER ON BANKRUPTCY ¶ 333.02, at 333-34 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. 2007).

The debtor in *Valley Health System* filed for relief under Chapter 9 of the Bankruptcy Code.  The debtor was a local health care district that operated three acute care hospitals and a skilled nursing facility for the benefit of the general public. The UST

argued that an ombudsman should be appointed.

The *Valley Health System* court found that "the balance of the *Alternate Family Care* factors weigh against the immediate appointment of a patient care ombudsman pursuant to § 333(a)(1) under the specific facts and circumstances of this case." Specifically, the court found:

> The UST has not offered any evidence to suggest that the quality of patient care or preservation of patient privacy is an issue at any of the District's facilities, or that the District will be unable to maintain the highest quality of patient care given its extensive and redundant internal policies and procedures and the current level of oversight by federal, state, local, and private entities. Nor has the UST submitted evidence of any existing tension between the interests of the patients and the District or actual conflicting interests of the Districts' employees resulting in a reduced level of patient care. Finally, there is nothing in the language of § 333(a)(1) that requires the court to make a preliminary finding that the debtor's existing internal controls are administered by one or more individuals who meet the definition of a "disinterested person" under § 101(14) before it can find that appointment of an ombudsman is not necessary for the protection of patients under the specific facts and circumstances of a case.

*Valley Health Sys.,* 381 B.R. at 765.  The *Valley Health System* court also cited, however, Rule 2007.2(b), and stated that it could review its decision later in the case "if the court finds a change in circumstances or newly discovered evidence that demonstrates the necessity of an ombudsman to monitor the quality of patient care and protect the interests of patients." *Id.* at 765-66.

In contrast, the court in *In re William L. Saber, M.D., P.C.*, 369 B.R. 631 (Bankr. D. Colo. 2007), declined to appoint an ombudsman.  That debtor was a single-physician plastic surgery practice.  The *Saber* court found the costs of appointment could adversely affect debtor's ability to reorganize.  There, the Chapter 11 filing was not

precipitated by concerns relating to quality of patient care or to patient privacy matters,

but by contractual dispute involving the debtor's former employee.  Significantly, the

debtor's principal was a physician who had practiced for more than twenty years, was in

good professional standing, and had procedures in place to protect the privacy of its

patients.

Here, the Debtor has cited to *In re Medical Associates of Pinellas, L.L.C.*, 360

B.R. 356 (Bankr. M.D. Fla. 2007).  *Medical Associates* is not analogous to this case,

however, because there, the court determined that "there would be no need for the

protection of patients given that the Debtor, as the administrative support provider to its

member physicians, has ceased doing business and no longer provides even

administrative support or lab services to those doctors."  *In re Medic. Assocs.,* 360 B.R.

at 361.

### The Specific Facts of This Case Do Not Require
### Appointment of an Ombudsman at This Time

The specific facts of this case do not require appointment of an ombudsman at

this time.  In determining not to appoint a health care ombudsman, this Court has

considered the following factors as significant:

> a.  The Debtor's formal program for compliance with the Health Insurance
> Portability and Accountability Act ("HIPAA"), which was enacted by the United
> States Congress in 1996;
>
> b. The Debtor's access to and ability to pay for the cancer treatment medicines to
> insure there would be no interruption in the delivery of these critical medicines;
>
> c. The Debtor does not plan to make any significant reductions to the number of
> skilled workers it currently employs, including its physicians, nurses, and

technicians so that it can maintain historical levels of service and care for its 30,000 patients;

d. The Debtor does not provide any in-patient services at any of its facilities. Therefore, the patients are not dependent on the Debtor's facilities to accommodate lengthy in-patient treatment;

e. From the Petition Date through December 2, 2008, the Debtor had not received any complaints from its patients and the bankruptcy had not affected the scheduling of patient appointments;

f. If a patient has a complaint concerning medical services, the patient can file a complaint with the state medical board and the Debtor has procedures in place to address any complaints;

g. The Debtor understands and complies with its record keeping duties under state and federal laws. Moreover, if a patient decides to see another physician, the patient is provided with a copy of their medical records. The Debtor understands that the law would require that the Debtor maintain medical records for six (6) years if the Debtor went out of business;

h. The Debtor's senior physicians have tremendous experience in the field of hematology-oncology treatment.

I. The Debtor is monitored by, at a minimum, the New York State Department of Health. The Debtor's labs are also certified by the Clinical Laboratory Improvement Amendments ("CLIA") the directives of which are carried out by the Food and Drug Administration, which performs a bi-annual audit and inspection of the labs; and

j. In the past fourteen months, the Debtor has received only three to five complaints from patients.

The fact that Debtor does not provide any in-patient services at any of its facilities holds substantial significance in this Court's decision.  This Court also agrees with Debtor that, for a practice that serves more than 30,000 critically ill patients, having only three to five complaints, equating to a complaint rate that is a fraction of 1%, is very significant.  The Court also is sensitive to the costs to the estate attendant to appointment of an ombudsman.

## Conclusion

This Court has determined that appointment of an ombudsman is not necessary for the protection of patients under the specific facts of this case. Notwithstanding the foregoing, the Court, on motion of the UST or any party in interest, may order the appointment of a patient care ombudsman at any time during the pendency of this case, if the Court finds a change in circumstances or is presented with newly discovered evidence that demonstrates the necessity of an ombudsman to monitor the quality of patient care and protect the interests of patients.

A separate Order consistent herewith shall issue.

Dated: December 11, 2008
    Central Islip, New York               */s/ Alan S. Trust*
                                     Alan S. Trust
                                     United States Bankruptcy Judge